UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

LORI REGINA MCCULLOUGH,　　　　　)

　　　Plaintiff,　　　　　　　　　)

vs.　　　　　　　　　　　　　　　　)　　　APR 4  1997.　　CV-95-8-3206-M

CHEROKEE COUNTY BOARD OF　　　　　)
EDUCATION,
　　　　　　　　　　　　　　　　　　)
　　　Defendant.

**ENTERED**

## MEMORANDUM OPINION

This action is before the court on defendant's motion for summary judgment.  Plaintiff, Lori Regina McCullough, originally brought claims against the Cherokee County Board of Education, and the following persons, in both their official and individual capacities:  the individual members of the Cherokee County Board of Education; and, the school superintendent, the principal, and cafeteria administrator of Gaylesville High School in Cherokee County, Alabama.  McCullough alleged those defendants subjected her to unlawful discrimination because of her disability (a knee injury) in violation of:  the Rehabilitation Act of 1973, 29 U.S.C. §§ 794 and 794a; the Americans with Disabilities Act, 42 U.S.C. §§ 12101 *et seq.*; Title VII of the Civil Rights Act of 1964; the Fourteenth Amendment to the United States Constitution; and 42 U.S.C. § 1983.

By order entered March 26, 1996, this court dismissed all defendants except the Cherokee County Board of Education ("the Board").  The following claims were allowed to remain against the Board:  "actions pursuant to the ADA, the Rehabilitation Act, and

*45*

the equal protection clause of the Fourteenth Amendment brought pursuant to 42 U.S.C. § 1983." (March 26, 1996 Order, at 2.) Defendant now moves for summary judgment on plaintiff's ADA claim. Although not specifically argued by defendant, its contentions apply equally to plaintiff's Rehabilitation Act claim.[1]

## I. STATEMENT OF FACTS

### A. McCullough's Employment with Defendant

Lori Regina McCullough was hired by the Cherokee County Board of Education as a lunchroom worker at Gaylesville High School in August of 1992. McCullough only completed her education through the ninth grade, and has not received a graduate equivalency diploma ("GED"). During McCullough's employment, Gaylesville High School administrators included Ed Arnold (school superintendent), Nancy Smith Terry (principal), and Shirley Smith (lunchroom manager). The lunchroom was operated by Shirley Smith and four lunchroom workers, including McCullough. (Plaintiff's Deposition, at 29.) McCullough was a non-tenured employee with a one year contract. Each Spring, based upon recommendations of the superintendent and principal, the board votes whether to renew each non-tenured employee's contract for the forthcoming school year.

---

[1] The language in the ADA tracks the Rehabilitation Act of 1973, which provides that "[n]o otherwise qualified individual with a disability ... shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency or by the United States Postal Service." 29 U.S.C. § 794(a). Also, the ADA expressly requires its provisions to be interpreted in a way that "prevents imposition of inconsistent or conflicting standards for the same requirements under" the ADA and the Rehabilitation Act. 42 U.S.C. § 12117(b).

2

McCullough's contract was renewed in the Spring of 1993, but not the Spring of 1994. Her non-renewal in 1994 is the subject of this action.

## B.  McCullough's injury

On August 31, 1993, McCullough injured her knee while working in the lunchroom.[2]  She slipped in a pool of water, tearing cartilage, ligaments, and breaking her kneecap.  McCullough was taken to Floyd Medical Center in Rome, Georgia, but she was not admitted.  Instead, she was directed to see an orthopedic surgeon.  McCullough visited Dr. Alan Bowen, an orthopedic surgeon, in early September, and underwent arthroscopic knee surgery on September 17, 1993.  For several months following the operation, she was unable to walk.  Then, as her condition improved, she was able to walk with the aid of crutches or a cane.  McCullough also was required to undergo extensive physical therapy, beginning in October of 1993.  She was unable to return to work during her rehabilitation process, and she was temporarily replaced in the lunchroom by Linda Crane.  McCullough did not return to work until May 12, 1994.

## C.  McCullough's Medical Limitations

On February 10, 1994, Dr. Bowen gave McCullough two notes to deliver to her employer, which read: "Will not be able to return to regular job - Permanent - Sedentary job training" and, "Permanent largely, sedentary job."  (Defendant's Exhibits 3 and 4.)  McCullough's husband delivered those notes to Ed Arnold, the school superintendent.  (Plaintiff's Deposition, at 49-51.)

---

[2] The record does not reveal which knee McCullough injured.

3

On April 12, 1994, Dr. Bowen wrote another note which modified McCullough's limitations as follows: "may return to work on limited duty as listed above." (Defendant's Exhibit 5.) The listed restrictions were: limited prolonged standing or walking; limited climbing, bending or stooping; and no lifting over 15 pounds. (Defendant's Exhibit 5.) McCullough's husband again delivered the note to superintendent Arnold. In addition, McCullough's daughter, Shelley, took a copy of the note to principal Terry. (Plaintiff's Deposition, at 57.) McCullough did not personally contact principal Terry or lunchroom manager Shirley Smith to formally request a return to work, however.

## D.  McCullough's Return to Work

On May 12, 1994, Terry and Smith drove to McCullough's home and asked her to return to work. They told her she could perform light duties in the lunchroom. (*Id.*, 65.) McCullough returned to work on Friday May 13, 1994, performing light duties such as washing dishes, cutting vegetables, and serving food. (*Id.*, 66-67.)

The following Monday, May 16, 1994, after McCullough had only worked one full day since returning, principal Terry recommended to superintendent Arnold that McCullough's contract not be renewed for the forthcoming school year. (Terry Deposition, at 11.) Terry claimed she made that recommendation because: McCullough "had never been a satisfactory worker"; she had not notified the school

4

on April 12, 1994 of her doctor's release to return to work;[3] and
when McCullough returned to "light duty," she did not show enough
enthusiasm or effort.  (*Id.*, 16-18.)    Terry said the following
about McCullough's return to work:

> My lunchroom manager was telling me that she would give
> her jobs like cutting up lettuce and she would take an
> hour and a half to chop two or three heads of lettuce.
> There was just no enthusiasm, no trying. And, I mean, we
> had plenty of sit down jobs in that lunchroom. We have
> cash registers. We have stools. We could accommodate
> her, but she was not trying to accommodate us.

(*Id.*, 18.)    Either Monday May 16, 1994 or the following day,[4]
lunchroom manager Smith completed a performance evaluation for
McCullough.    (Plaintiff's    Exhibit    8.)      McCullough    received
"satisfactory" ratings in each of the following categories:   job
knowledge;    quality    of    work;    cooperation;    responsibility;
initiative;    dependability;    equipment    care;    and    safety.[5]
(Plaintiff's Exhibit 8.)

For the next few days, McCullough continued doing "light duty"
chores in the lunchroom, but took a sick day on May 19, 1994 to
visit Dr. Bowen.    Dr. Bowen told McCullough that her knee had
reached maximum medical improvement, and he permanently imposed the

---

[3] McCullough does not recall when she sent Dr. Bowen's April 12 note to
Terry and Arnold, but does say that it was before she was visited by Terry and
Smith on May 12, 1994. (Plaintiff's Deposition, at 57.)

[4] Smith incorrectly dated her signature on the performance evaluation "5-
16-97." McCullough dated her signature of the document "5-17-94."

[5] The employee's job performance is rated on the following scale:
excellent;  good;  satisfactory;  below  expectation;  or,  unsatisfactory.
(Plaintiff's Exhibit 8.)

5

limitations recorded in his April 24, 1994 note.    (Defendant's
Exhibit 6: McCullough's EEOC Affidavit, at 2.)

**E.   May 24, 1994**

**1.   McCullough's Meeting with Terry**

On May 24, 1994, McCullough met with principal Terry.   She
then was unaware Terry had recommended her contract not be renewed,
and Terry did not disclose that fact.   Terry gave the following
reason for not informing McCullough:

> if you're going to let somebody go and they want to
> finish out the year, it's better not to let them know a
> month in advance.   It's better to wait until the last
> couple of weeks of school.

(Terry Deposition, at 11.)   McCullough summarized her meeting with

Terry as follows:

> I told her that I would not be able to perform my
> lunchroom worker position the next year due to the
> restrictions placed on my knee.   I asked Mrs. Smith
> [Terry] if there were any other light duty positions
> vacant in the 1994/1995 school year for which I might be
> qualified.   Mrs. Smith [Terry] told me that the only
> position for which I might be qualified was as a special
> education aid.   However, this position required lifting
> a disabled girl out of her wheelchair and I could not
> physically perform this duty due to my knee injury.   Mrs.
> Smith [Terry] told me that the special aid position was
> already filled by someone with less seniority than myself
> but that if I was physically capable of doing the job I
> would have been placed into this position.   Mrs. Smith
> [Terry] told me that the only other vacant positions were
> for tenured employees only.   I was not a tenured employee
> at the time.   I do not know of any vacant positions for
> which I would be qualified for the 1994/1995 school year.
> I consider the position of teacher's aid to be a light
> duty position.   I do not know of any vacant teacher's aid
> positions for the 1994/1995 school year.    I am not
> currently qualified to hold the position of teacher's aid
> but I am willing to be qualified if a position becomes
> available.

(*Id.*, 2.)

6

McCullough says she asked Terry if her replacement, Linda Crane, would continue working during the 1994/95 school year. Terry allegedly told McCullough that Crane would not return, but Crane was, in fact, allowed to return for the next school year. McCullough claims:

> I might have been able to return to work for the 1994/1995 school year if I had known that Linda was staying on. With Linda working in the lunchroom I could have continued washing dishes and performing other kitchen tasks while sitting and gradually worked up to performing my former lunchroom duties.

(Defendant's Exhibit 6: McCullough's EEOC Affidavit, at 2.) McCullough also claims she asked Terry if she would "give me the summer ... [t]o get better." (Plaintiff's Deposition, at 79.) Terry did not respond to McCullough's request. Instead, she recommended that McCullough draft a "letter of resignation" with the help of Terry's secretary. Terry claims the gist of what McCullough told her during their meeting was that she was unsure whether she wanted to continue working. Terry says she proposed the resignation letter only after McCullough told her "I just don't want to work." (Terry Deposition, at 19.)

McCullough denies Terry's claim and says Terry told her the Board could not hire someone to replace McCullough until she resigned. McCullough claims she signed the resignation letter as a favor to Terry, and because she felt she had no other choice but to sign it.[6] (Plaintiff's Deposition, at 86, 91.) McCullough left

---

[6] McCullough said Terry "did not explicitly tell me that I had to sign the letter of resignation but I felt that I had no other choice but to sign the letter due to her matter-of-fact manner." (Defendant's Exhibit 6: McCullough's EEOC Affidavit.)

7

work early that day because she was "very shocked and upset" over the situation. (Defendant's Exhibit 6, at 3.)

### 2. the School Board meeting

On the same day that Terry and McCullough met (May 24, 1994), Arnold recommended to the school board that McCullough's contract not be renewed for the 1994/95 school year. (Arnold Deposition, at 93.) Arnold based his recommendation solely upon Terry's May 16, 1994 representation that McCullough "just ... doesn't want to do the job." (*Id.*, 95.) It is unclear from the record whether Arnold was aware of McCullough's resignation letter when he made his recommendation. The board approved Arnold's recommendation. (*Id.*, 93.)

### F. McCullough Attempts to Rescind her Resignation

Terry and Arnold informed McCullough of the board's decision the following day (May 25, 1994), and McCullough began having second thoughts about her resignation. (Defendant's Exhibit 6, at 3.) The next day, McCullough had her husband deliver a letter to Arnold, requesting that her resignation be withdrawn. (Plaintiff's Deposition, at 95, 99.) Arnold informed McCullough's husband, however, that Terry had recommended McCullough's termination even before she resigned and, therefore, withdrawing her resignation would not cause her contract to be renewed. (Defendant's Exhibit 6: McCullough's EEOC Affidavit.) McCullough was allowed to complete her employment for the 1993/94 school year. She returned

8

to work the next day, and continued performing light duties in the lunchroom.[7]

McCullough claims that in June of 1994 she completed an application requesting a position as lunchroom worker, a teacher's aid, or a secretary in the Cherokee County School system, but she was not rehired. The school board took final action at its June 21, 1994 meeting, again voting not to renew her contract. (Id.)

## II. ADA EVALUATION

In 1990, Congress enacted the ADA "to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities." 42 U.S.C. § 12101(b)(1). The ADA provides that

no covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment.

42 U.S.C. § 12112(a). The statute further imposes an affirmative duty for employers to provide reasonable accommodations for disabled individuals. In ADA parlance, the word "discriminate" is defined broadly to include "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability ... unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business." 42 U.S.C. § 12112(b)(5)(A).

---

[7] It is unclear from the record how long McCullough continued to work in her position after she returned.

9

Although the Eleventh Circuit has not explicitly held so, it
is widely agreed that the burden-shifting analysis expressed in
*McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36
L.Ed.2d 668 (1973), and applied in Title VII cases is similarly
followed in deciding cases brought under the ADA. *See Moses v.
American Nonwovens, Inc.*, 97 F.3d 446, 447 (11th Cir. 1996), *cert.
denied*, __ U.S. __, 117 S.Ct. 964 (1997)(implicitly using burden-
shifting framework); *McNemar v. The Disney Store, Inc.*, 91 F.3d
610, 619 (3d Cir. 1996), *cert. denied*, __ U.S. __, 117 S.Ct. 958
(1997); *Rizzo v. Children's World Learning Centers, Inc.*, 84 F.3d
758, 761 n.2 (5th Cir. 1996), *cert. denied*, __ U.S. __, 117 S.Ct.
958 (1997); *see also Johnson v. Boardman Petroleum*, Inc. 923 F.
Supp. 1563 (S.D. Ga. 1996); *Lewis v. Zilog, Inc.*, 908 F. Supp. 931
(N.D. Ga. 1995).

McCullough bears the burden of proving by a preponderance of
the evidence that the Board intentionally discriminated against her
because of her disability. That can be done either by direct or
circumstantial    evidence.      When    plaintiff's    evidence    is
circumstantial in nature, however, the Supreme Court has developed
a three stage framework for focusing the inquiry. *See McDonnell
Douglas*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); *Texas
Department of Community Affairs v. Burdine*, 450 U.S. 248, 252-53,
101 S.Ct. 1089, 1093-94, 67 L.Ed.2d 207 (1981); *St. Mary's Honor
Center v. Hicks*, 509 U.S. 502, 113 S.Ct. 2742, 125 L.Ed.2d 407
(1993). First, plaintiff must establish a prima facie case. A
prima facie case under the ADA requires proof that: (1) plaintiff

10

has a disability;[9] (2) she is a qualified individual; and (3) she
was subjected to unlawful discrimination (i.e., adverse employment
action) because of her disability.  *Gordon v. E.L. Hamm &
Associates, Inc.,* 1996 WL 665614, *3 (11th Cir. Dec. 4,
1996)(citing *Pritchard v. Southern Company Services,* 92 F.3d 1130,
1132 (11th Cir. 1996) and *Morisky v. Broward County,* 80 F.3d 445,
447 (11th Cir. 1996)).  In addition, McCullough must demonstrate
that her employer had actual or constructive knowledge of her
disability, or considered her disabled.  *Morisky,* 80 F.3d at 448.

If plaintiff establishes a prima facie case, then at the
second stage of analysis the burden of production shifts to
defendant to rebut the presumption of intentional discrimination by
articulating legitimate, nondiscriminatory reasons for the
employment action.  *Burdine,* 450 U.S. at 253, 101 S.Ct. at 1093.
If defendant does so, then in the final step of the inquiry
plaintiff must have an opportunity to show by a preponderance of
the evidence that defendant's stated reasons merely are pretexts
for unlawful, discriminatory motives.  *Burdine,* 450 U.S. at 253,
101 S.Ct. at 1093.

**A. McCullough's Prima Facie Case and the Process to
Determine "Reasonable Accommodation"**

**1. Does McCullough have a "disability"?**

Under the ADA, "disability" is defined as: (1) a physical or
mental impairment that substantially limits one or more of the

---

[9] The determination of whether an individual has a disability is not
necessarily based on the name or diagnosis of the impairment the person has, but
rather on the effect of that impairment on the life of the individual. 29 C.F.R.
§ 1630.2(j)(App.).

11

major life activities of such individual; (2) a record of such impairment; or (3) being regarded as having such an impairment. 42 U.S.C. § 12102(2). Defendant concedes that "[w]ithout question McCullough was disabled." (Defendant's Brief, at 6.)

### 2.   Is McCullough "Qualified"?

Defendant's motion for summary judgment hinges on whether McCullough can establish that she was qualified to be a Gaylesville High School lunchroom worker. A "qualified individual with a disability"[9] is an "individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8)(emphasis added). Put another way, although the ADA prohibits the discharge of a person "because of" a disability, an "employer may fire [an] employee because he cannot perform his job adequately, i.e., he is not a 'qualified individual' within the meaning of the ADA." *Hedberg v. Indiana Bell Telephone Co.*, 47 F.3d 928, 932 (7th Cir. 1995). Defendant asserts that McCullough was not "qualified" within the meaning of the ADA because she could not perform the essential functions of the lunchroom worker position. (Defendant's Brief, at 7.)

---

[9] Because the ADA expressly requires its provisions to be interpreted in a way that "prevents imposition of inconsistent or conflicting standards for the same requirements" under the ADA and the Rehabilitation Act, 42 U.S.C. § 12117(b), courts rely on case law interpreting the Rehabilitation Act's "otherwise qualified" requirement in determining whether plaintiffs are "qualified" under the ADA. *See* White v. York International Corp., 45 F.3d 357, 360 n.5 (10th Cir. 1995); Munoz v. H & M Wholesale, Inc., 926 F. Supp. 596, 604-05 (S.D. Tx. 1996).

Defendant claims McCullough's own testimony shows that, with or without reasonable accommodation, she could not perform the essential functions of a lunchroom worker.   Plaintiff stated the following in her affidavit submitted to the EEOC:

> On about May 24, 1994, I had a meeting with Nancy Smith [Terry].  <u>I told her that I would not be able to perform my lunchroom worker position the next year due to the restrictions placed on my knee</u>.

(Defendant's Exhibit 6, at 2 (emphasis added).)   Defendant construes that statement as an admission by plaintiff that, with or without reasonable accommodation, she could not perform the essential functions of the lunchroom worker position.   Such an interpretation goes too far, and also is misguided, in that, it presumes that defendant has, as a matter of law, provided reasonable accommodation or properly engaged in the interactive process.   It is doubtful McCullough knew of the process of reasonable accommodation, or of the possibility of job restructuring when she and Terry met on May 24, 1994.   When McCullough said she could not perform her job due to her restrictions, Terry knew of those restrictions, but chose not to examine the specific lunchroom tasks McCullough could and could not perform.  A reasonable employer would have construed McCullough's comment that she could not perform her lunchroom worker position <u>due to the restrictions placed on her knee</u>, not as a stopping point, but as a starting point for determining what, if any, reasonable accommodation could be provided.  Nonetheless, the mere fact that McCullough admits there are certain functions she cannot perform due to her medical restrictions does not automatically

13

compel the legal conclusion that she is not a qualified individual under the ADA. See *Dockery v. North Shore Medical Center*, 909 F. Supp. 1550, 1555 (S. D. Fla. 1995)(plaintiff's "mere admitted incapacitation at the time of her resignation ... does not ... lead to the legal conclusion that she is not a qualified individual under the ADA").

### a. essential functions

Initially, the essential functions of McCullough's position as a Gaylesville High School lunchroom worker must be identified.

> The term *essential functions* means the fundamental job duties of the employment position the individual with a disability holds or desires. The term "essential functions" does not include the marginal functions of the position.

29 CFR § 1630.2(n)(1). The Regulations suggest the following considerations for determining whether a job function is essential:

> (i) The function may be essential because the reason the position exists is to perform that function.

> (ii) The function may be essential because of the limited number of employees available among whom the performance of that job function can be distributed; and/or

> (iii) The function may be highly specialized so that the incumbent in the position is hired for his or her expertise or ability to perform the particular function.

29 CFR § 1630.2(n)(2).

"If an employer has prepared a written description before advertising or interviewing applicants for a position, the description shall be considered evidence of the essential functions of the job." 42 U.S.C. § 12111(8). The "Duties and Responsibilities" of a lunchroom worker defined in defendant's written job description are:

14

1.   **Assist in the preparation of food and cafeteria counter.**

2.   **Serve food from the cafeteria counter.**

3.   **Assist in the dishwashing area ... in the cleaning of floors, counters, tables, and furnishings in the dining area as assigned by the manager.**

4.   **Attend meetings of in-service training as required by lunchroom manager.**

5.   **Perform related duties as required by lunchroom manager.**

6.   **Notify lunchroom manager of impending absence from job.**

7.   **Conduct shall not be in a manner detrimental to public confidence in themselves, their position, or the school system.**

(Plaintiff's Exhibit 5, at 2.)  Superintendent Arnold says the essential functions of a lunch worker are to "prepare food, to place it out to the children and clean up afterwards." (Arnold Deposition, at 97.)

McCullough says she was responsible for a wide range of duties including cooking, cleaning, washing dishes, serving food and lifting and carrying pots, pans, trays and other kitchenware. (Defendant's Exhibit 6: McCullough's EEOC Affidavit, at 1.) Plaintiff argues that the essential functions of her lunchroom worker position were sedentary and, therefore, were well-suited for the physical restrictions imposed on her by Dr. Bowen. (Plaintiff's Brief, at 2.)  On the other hand, defendant claims "[t]he essential functions require lifting and carrying heavy items, bending, stooping and walking. ... Quite obviously, this is not a sedentary position."  (Defendant's Brief, at 2.)  Yet,

15

defendant's assertion that the position's essential functions are rigorous is refuted by principal Terry's testimony that "we had plenty of sit down jobs in that lunchroom." (Terry Deposition, at 18.)  Based on that testimony, a reasonable jury could conclude that the "heavy duty" aspects of the lunchroom worker position were merely marginal functions.

Plaintiff does not contend she can perform the essential functions of her lunchroom worker position *without* reasonable accommodation.  Rather, plaintiff claims she is qualified because she can continue her employment as a lunchroom worker *with* reasonable accommodation.  Plaintiff claims she can be reasonably accommodated if defendant would restructure her position and purchase modestly priced equipment to aid her work (*i.e.*, providing a stool for her to sit on while working).  (Plaintiff's Brief, at 5-6.)

### b.   does a reasonable accommodation exist

"[E]stablishing that a reasonable accommodation exists is a part of an ADA plaintiff's case." *Willis v. Conopco, Inc.*, 1997 WL 104160, at *5.  McCullough claims she told Terry the following at their May 24, 1994 meeting:

> I told her that I would not be able to perform my lunchroom worker position the next year due to the restrictions placed on my knee.  I asked Mrs. Smith [Terry] if there were any other light duty positions vacant in the 1994/1995 school year for which I might be qualified.

(Defendant's Exhibit 6, at 2 (emphasis added).)  Defendant asserts that statement by McCullough relieves it of any potential liability, because the accommodation McCullough requested did not

16

exist: it is undisputed that there were no available positions outside the lunchroom. Defendant's argument presupposes that the burden is placed on an employee to request specific accommodation when she approaches her employer. A similar argument was made by the employer in *Willis v. Conopco, Inc.*, 1997 WL 104160, at *4 (11th Cir. March 25, 1997). The employee in *Willis* argued in response that she, as a mere employee, was in no position to know what specific accommodations were available, or how reasonable those accommodations were. *Id.*, at *6. The court nevertheless granted summary judgment for the employer stating:

> Whatever may be said of her "burden" as an employee in the day-to-day workplace seeking an accommodation for her condition, Plaintiff — as a litigant bringing an ADA action — has failed to produce evidence (after the completion of discovery) of the existence of any "accommodation" at all, "reasonable" or otherwise.

*Id.*, at *6. Thus, the *Willis* court did not require the plaintiff to state what specific accommodation was needed when she requested accommodation as an employee, but the plaintiff was required to present evidence as to what specific accommodation was needed at the summary judgment stage of the trial.

McCullough, like Willis, did not request specific accommodation in the form of job restructuring while she was employed by the Board. Unlike Willis, however, after the completion of discovery in this action, and in response to defendant's motion for summary judgment, McCullough has come forward with her specific request for accommodation. Thus, plaintiff has satisfied the burden of production placed on her by the Eleventh Circuit by coming forward with evidence of the

17

existence of an accommodation in response to defendant's motion for summary judgment.

An ADA plaintiff also bears the burden of proving the reasonableness of the accommodation. An employer may reasonably accommodate an employee "by reallocating or redistributing non-essential, marginal job functions." 29 C.F.R. § 1630. An employer, however, has no obligation under the ADA to reallocate essential functions. *See Larkins v. CIBA Vision Corp.*, 858 F. Supp. 1572, 1583 (N.D. Ga. 1994)("The ADA ... does not require Defendant to eliminate an essential function of the ... position to accommodate Plaintiff"); 29 C.F.R. § 1630.2(o)(App.)("An employer ... is not required to reallocate essential job functions").

The regulations envision a situation where, as here, a position includes a wide range of duties, some of which the disabled employee can perform, but others she cannot.

> [A]n employer may have two jobs, each of which entails the performance of a number of marginal functions. The employer hires a qualified individual with a disability who is able to perform some of the marginal functions of each job but not all of the marginal functions of either job. As an accommodation, the employer may redistribute the marginal functions so that all of the marginal functions that the qualified individual with a disability can perform are made a part of the position to be filled by the qualified individual with a disability. The remaining marginal functions that the individual with a disability cannot perform would then be transferred to the other position.

29 C.F.R. § 1630.2(o)(App.). Defendant cites the EEOC's Technical Assistance Manual on the ADA for the proposition that an employer is not required to create a permanent light duty job for a disabled employee under the ADA. The manual provides:

18

> The A.D.A. does not require an employer to create a
> "light-duty" position <u>unless</u> the 'heavy duty' tasks an
> injured worker can no longer perform are marginal job
> functions which may be reallocated to co-workers as part
> of the reasonable accommodation of job restructuring.

EEOC's Technical Assistance Manual on the ADA, § 9.4 (emphasis

added). A jury could reasonably conclude that defendant could have

reasonably accommodated McCullough through shifting her "heavy-duty"

marginal tasks (e.g., unloading trucks, carrying pots and pans) to

her three lunchroom co-workers, while shifting other "light-duty"

tasks (e.g., working the cash register, serving food to the

children, washing dishes, and cutting vegetables) to McCullough.

In fact, Terry has stated that "[t]here's lots of accommodating

type jobs in that lunchroom that would be enough for one full time

worker at least." (Terry Deposition, at 28.) Thus, plaintiff has

presented sufficient evidence to establish both that an

accommodation exists, and that the accommodation is reasonable.

Defendant has not argued that restructuring the lunchroom

assignments would place an undue burden upon it. Principal Terry

concedes there are several lunchroom duties McCullough can perform

while sitting on a stool. Clearly, providing a stool for

McCullough to use while performing her tasks is not an unreasonable

accommodation. Thus, a reasonable factfinder could conclude that

defendant can reasonably accommodate McCullough without incurring

an undue burden.

### c. the "interactive process" to determine reasonable accommodation

The burden is not placed on ADA plaintiffs to specifically say

the words "I want reasonable accommodation." *See Bultemeyer v. Fort*

19

*Wayne Community Schools*, 100 F.3d 1281, 1285 (7th Cir. 1996)("properly participating in the interactive process means that an employer cannot expect an employee to read its mind and know that he or she must specifically say 'I want a reasonable accommodation'"). "In general ... it is the responsibility of the individual with the disability to inform the employer that an accommodation is needed." 29 C.F.R. § 1630.9 (App.)(1995). Once such a request has been made, "[t]he appropriate reasonable accommodation is best determined through a flexible, interactive process that involves both the employer and the qualified individual with a disability." *Id*. In other words, the responsibility for fashioning a reasonable accommodation is shared between employee and employer.

The regulations suggest that an employer should use a problem solving approach to determine what accommodation, if any, is reasonable. The employer should:

(1) Analyze the particular job involved and determine its purpose and essential functions;

(2) Consult with the individual with a disability to ascertain the precise job-related limitations imposed by the individual's disability and how those limitations could be overcome with a reasonable accommodation;

(3) In consultation with the individual to be accommodated, identify potential accommodations and assess the effectiveness each would have in enabling the individual to perform the essential functions of the position; and

(4) Consider the preference of the individual to be accommodated and select and implement the accommodation that is most appropriate for both the employee and the employer.

29 C.F.R. § 1630.9 (App.).

20

### d.    breakdown of the process

McCullough claims that when she informed Terry of her difficulty performing her lunchroom worker tasks, Terry merely stated that McCullough should complete a resignation letter.[10]  Such a response is not within the ambit of the "flexible, interactive process" the regulations demand.  Clearly, the interactive process failed in this instance.  Neither the ADA nor its administrative regulations, however, allocate liability for instances in which the interactive process fails.  There are no hard and fast rules for determining who is responsible for a breakdown in the process.

> Rather, courts should look for signs of failure to participate in good faith or failure by one of the parties to make reasonable efforts to help the other party determine what specific accommodations are necessary.  A party that obstructs or delays the interactive process is not acting in good faith.  A party that fails to communicate, by way of initiation or response, may also be acting in bad faith.  In essence, courts should attempt to isolate the cause of the breakdown and then assign responsibility.

*Beck v. Wisconsin Bd. of Regents*, 75 F.3d 1130, 1135-36 (7th Cir. 1996).

The Eleventh Circuit has refused to follow *Beck*, "[t]o the extent that the Seventh Circuit's *Beck* opinion can be interpreted ... to require an 'interactive process' such that an employer can be held liable merely for failing to engage in the process itself

---

[10] Terry claims McCullough said she <u>could not</u> and <u>did not</u> want to continue her lunchroom job, "not even on the light duty."  (Terry Deposition, at 22.)  McCullough denies telling Terry that she would be unable to perform even the light duty work.   (Plaintiff's Deposition, at 71.)   At this stage of the litigation, the evidence must be considered in the light most favorable to McCullough.    Therefore, this court presumes McCullough did not make such a statement.

21

(regardless of whether a 'reasonable accommodation' could in reality have been made for the employee)." *Willis*, 1997 WL 104160, at *4. In other words, an employer cannot be held liable for failing to investigate accommodation where an investigation would have been fruitless.   Terry's own testimony sheds light on whether an investigation would have been futile.  She said:

> [W]e had plenty of sit down jobs in that lunchroom.  We have cash registers.  We have stools.  We could accommodate her, but she was not trying to accommodate us.

(Terry Deposition, at 18 (emphasis added).)  Later, when asked if McCullough was capable of performing the position of lunchroom worker in May of 1994, Terry responded:

> She could have had she wanted to.  There's lots of accommodating type jobs in that lunchroom that would be enough for one full time worker at least.

(*Id.*, 28 (emphasis added).)  Thus, Terry's testimony suggests that "reasonable accommodation' could in reality have been made for [McCullough]." *Willis*, at *4.  Therefore, this court must examine defendant's good faith, or lack thereof, in participating in the "interactive process.'

A reasonable jury could conclude that the circumstances surrounding Terry's recommendation to Arnold sufficiently show that Terry did not act in good faith.  Plaintiff notes the following:

> After only one day of observing McCullough on light duty, Smith Terry determined that she would not be able to successfully complete her light-duty job assignment. ... A reasonable juror could determine that the evidence in this case suggests that Smith Terry's recommendation was not based on McCullough's alleged incompetence but on her unwillingness to make any attempt to accommodate McCullough's disability. ...  Smith Terry made no attempt

22

to discuss these alleged deficiencies with McCullough or
consider how the light-duty assignment could be improved.

(Plaintiff's Brief, at 7-8.)

Terry's bad faith is further suggested by her actions at the
May 24, 1994 meeting with McCullough.   Terry had already
recommended McCullough's termination to Superintendent Arnold, but
made no mention of that fact before suggesting to McCullough that
she resign.   Instead of undertaking a good faith investigation into
what possible job restructuring could be done to allow McCullough
to continue working in the lunchroom, Terry merely came to the
immediate conclusion that McCullough could not work in the
lunchroom, with or without reasonable accommodation.   A jury could
reasonably conclude that Terry's actions were not taken in good
faith when she recommended to Arnold that McCullough be terminated
after only one day of work, and when she suggested to McCullough
that she resign.   She undertook both of those actions without
conducting a more through inquiry into possibly restructuring
McCullough's lunchroom worker position to accommodate her.

McCullough may be qualified, because she may be able to
perform the essential functions of the lunchroom worker job with
reasonable accommodation.   The evidence suggests defendant did not
give her an adequate chance to demonstrate this.   McCullough has
alleged facts which, viewed in the light most favorable to her,
present a genuine issue of material fact as to whether she could
have performed the essential functions of her job had defendant
accommodated her.

23

### 3. Was McCullough subjected to an adverse employment action because of her disability?

In order to satisfy the final prong of her prima facie case, McCullough must prove she suffered an adverse employment decision as a result of her handicap. Not all actions taken by an employer, however, constitute "adverse employment decisions." *See Connell v. Bank of Boston*, 924 F.2d 1169, 1179-80 (1st Cir.), *cert. denied*, 501 U.S. 1218, 111 S.Ct. 2828, 115 L.Ed.2d 997 (1991). McCullough claims she "was terminated solely because of her disability." (Plaintiff's Brief, at 2.) Although McCullough contends that she was terminated in violation of the ADA, it should be noted the ADA provides protection against adverse actions that fall short of termination. *See* 42 U.S.C. § 12112(a)(prohibiting discrimination "in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment"); *see also McNely v. Ocala Star Banner Corp.*, 99 F.3d 1068, 1078 (11th Cir. 1996)(reversing jury verdict in favor of employer where verdict form erroneously limited recovery to "termination").

Defendant apparently concedes that McCullough was, in fact, terminated. Defendant has not argued that plaintiff voluntarily resigned her position and, thereby, was not subjected to an adverse employment decision. *See Eder v. Motorola, Inc.*, 1997 WL 51580, *5 (N.D. Ill. Feb. 4, 1997)(undisputed evidence showed plaintiff's resignation was voluntary and not coerced and, therefore, plaintiff "did not suffer an adverse employment action"). Instead, defendant argues that "termination of McCullough's employment was not a

24

prohibited act" because "termination of unqualified persons, even if disabled, is not prohibited." (Defendant's Brief, at 6.) Defendant asserts that "McCullough was not 'qualified' because she could not perform all of the essential functions of the job even with reasonable accommodation." (*Id.*, 6-7.) This court has already determined there are genuine issues of material fact as to whether McCullough was qualified (i.e., whether she could perform the essential functions of her position with reasonable accommodation). Thus, if a reasonable jury concludes that McCullough was "qualified", it could also conclude that she was subjected to an adverse employment action because of her disability, when her contract was not renewed.

**B.   Defendant's Legitimate Nondiscriminatory Reasons for McCullough's Termination**

Defendant claims McCullough was terminated because she could not perform the essential functions of her lunchroom worker position. (Defendant's Brief, at 7.) Terry also says she recommended McCullough's termination because McCullough "had never been a satisfactory employee." (Terry Deposition, at 16.). Terry says McCullough lacked enthusiasm when she returned to work and that "she was not trying to accommodate us." (Id., 18.) "An employer's good faith belief that an employee's performance is unsatisfactory constitutes a legitimate nondiscriminatory reason for termination." *Clark v. Coats & Clark*, 990 F.2d 1217, 1228 (11th Cir. 1992).

25

## C.   McCullough's Evidence of Pretext

McCullough must present genuine issues of fact as to the truthfulness of defendant's reasons for terminating her employment to survive summary judgment. As discussed above, the evidence suggests Terry did not properly participate in the interactive process to determine if McCullough could perform her lunchroom worker position with reasonable accommodation. "In cases where the courts have found employers liable for failing to reasonably accommodate an employee, it is generally the result of the employer's lack of good faith in the interactive process or, in some cases, a complete lack of any attempt to accommodate the employee." *Valentine v. American Home Shield Corporation*, 939 F. Supp. 1376, 1398 (N.D. Iowa 1996). As discussed *supra*, if McCullough is found to have been qualified, a reasonable jury could also conclude that McCullough was subjected to unlawful discrimination when she was terminated.

Terry's claim that McCullough had never been a satisfactory employee is not supported by the record. McCullough's performance evaluations, which were completed by the lunchroom supervisor, Shirley Smith, establish that McCullough consistently received "satisfactory" ratings in all aspects of her employment.[11] In fact, McCullough was given a "satisfactory" performance rating on either the day that, or the day after, Terry recommended McCullough's

---

[11] Although McCullough received less than satisfactory ratings in December of 1992, her first semester of employment, her manager noted that McCullough "never worked with Food Service before and Regina has had to learn so much these 3 months and she is improving daily." (Plaintiff's Exhibit 8, at 13.)

26

termination.  Thus, McCullough has presented sufficient evidence to
rebut each of defendant's proffered reasons.   "[P]laintiff is
entitled to survive summary judgment ... if there is sufficient
evidence to demonstrate the existence of a genuine issue of fact as
to the truth of each of the employer's proffered reasons for its
challenged action." *Combs v. Plantation Patterns*, 106 F.3d 1519,
__ (11th Cir. 1997).  Accordingly, defendant's motion for summary
judgment is due to be denied.

### III.  CONCLUSION

For the foregoing reasons, defendant's motion for summary
judgment is due to be denied.  An order consistent with this
memorandum opinion shall be entered contemporaneously herewith.

DONE this __4th__ day of April, 1997.

United States District Judge